UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:22-cv-00003-LLK

ANISSA E.                                                                                                                          PLAINTIFF

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claims for Disabled Widow's Benefits (DWB) under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. The fact and law summaries of the parties are at Doc. 13 and 15. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [Doc. 9].

Plaintiff makes three arguments. Because Plaintiff's third argument is persuasive and the Administrative Law Judge's (ALJ's) does not comport with applicable legal standards, the Court will REMAND this matter to the Commissioner for a new decision.

**Background facts and procedural history**

On June 15, 2012, the previous ALJ issued a partially favorable decision. [Doc. 8 at 101-10]. The ALJ denied Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act because she was not under a disability from November 5, 2007, when she alleged that she became disabled, through September 30, 2009, when her insured status expired. *Id.* at 103, 110. The ALJ granted Plaintiff's SSI claim, finding that she became disabled on February 18, 2010. *Id.* at 110. The ALJ found that, beginning on February 18, 2010, Plaintiff has an RFC:

> … to perform light work … except that she can perform only simple one to two step tasks not requiring sustained attention to detail, no interaction with the general public, and only occasional

interaction with coworkers and supervisors.  In addition, she needs to rest at least three hours a day.

*Id.* at 107.  This need for at least three hours of unscheduled rest during the workday was tantamount to an ultimate finding of disability because few jobs accommodate such a need.

In 2017, Plaintiff got married and her SSI was terminated due to excess resources.  [Doc. 13 at PageID.725].  On April 27, 2019, Plaintiff's husband died.  *Id.*  On April 29, 2019, Plaintiff filed the present SSI and DWB claims.  [Doc. 8 at 39].

### The ALJ's decision

On April 29, 2019, Plaintiff filed claims for DWB and SSI, alleging that she became disabled on March 15, 2010.  [Doc. 13 at PageID.725; Doc. 8 at 39, 284].

On October 13, 2020, the ALJ issued the Commissioner's final decision.  [Administrative Record, Doc. 8 at 39-47].  As a threshold matter, the ALJ found that Plaintiff meets the non-disability requirements for DWB, i.e., she is the unmarried widow of a deceased insured worker and has attained the age of 50.  *Id.* at 41.

The ALJ analyzed Plaintiff's disability claim pursuant to the five-step sequential evaluation process, which applies in all Social Security disability cases.

First, the ALJ found that Plaintiff has not engaged in substantial gainful activity at any time during the "prescribed period."  *Id.* at 41.  The "prescribed period" is from April 27, 2019, when Plaintiff's husband died, through June 30, 2016.  [Doc. 8 at 41, 162; Doc. 13 at PageID.725-26].

Second, the ALJ found that Plaintiff has the following severe, or vocationally significant, impairments:  obesity; diabetes mellitus; osteoarthritis of the left knee; chronic obstructive pulmonary disease (COPD); anxiety; and depression.  *Id.*

Third, the ALJ found that Plaintiff does not have an impairment that satisfies the medical criteria of any impairment listed in Appendix 1 of the regulations.  *Id.* at 42.

As in any case that proceeds beyond Step 3, the ALJ determined Plaintiff's residual functional capacity (RFC), which is defined as the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ found that, notwithstanding her severe physical impairments, Plaintiff can:

> … perform a range of light work … can lift and carry or push and pull 20 pounds occasionally and 10 pounds frequently … can sit, stand, and walk about six hours in an eight-hour workday … should only occasionally climb ladders, kneel, or crawl … should avoid concentrated exposure to pulmonary irritants.

*Id.* at 43. The ALJ found that, notwithstanding her severe mental impairments, Plaintiff can "perform simple routine repetitive work tasks … can frequently interact with coworkers, supervisors, and the general public." *Id.*

Fourth, the ALJ found that Plaintiff has no past relevant work. *Id.* at 46.

Fifth, the ALJ found that Plaintiff retains the ability to perform a significant number of unskilled, sedentary jobs in the national economy such as router, photocopy machine operator, and marker. *Id.* at 47.

## Plaintiff's third argument is persuasive.

This Opinion will consider Plaintiff's last argument first. Plaintiff's third argument is that the ALJ's decision does not comport with the requirements of *Drummond v. Comm'r*, 126 F.3d 837 (6th Cir. 1997). [Doc. 13 at PageID.738-40]. In promulgating Acquiescence Ruling (AR) 98-4(6), the Social Security Administration recognized applicability of *Drummond* in cases (such as the present one) arising within the Sixth Circuit.

In determining Plaintiff's RFC, the present ALJ acknowledged the previous ALJ's RFC determination as well as applicability of *Drummond v. Comm'r*, 126 F.3d 837 (6th Cir. 1997) in the present case. *Id.* at 44. *Drummond* held that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the [RFC] findings of a previous ALJ." *Id.* at 842. The ALJ found that medical improvement had occurred:

3

> … That [previous] decision found the claimant, as of February 18, 2010, to be capable of unskilled light work, but that she would need to rest at least three hours a day. At the hearing, the claimant indicated that she continued to be so limited. Among other things, she testified to not effectively being able to stand at one time for more than 15 to 20 minutes and to needing at least two naps a day. However, the new evidence received in connection with the instant case does not reasonably substantiate such a debilitating degree of limitation. Accordingly, the prior decision cannot presently be found very persuasive or accepted. … Overall, the claimant has clearly experienced an **improvement** *(emphasis added)* in her ability to work since the last hearing level decision based on the new evidence received in connection with the instant case.

[Doc. 8 at 44-45].

Plaintiff's argument is persuasive for three reasons.

First, the above finding of "improvement in [Plaintiff's] ability to work since the last hearing level decision" [Doc. 8 at 45] is at odds with the ALJ's statement to Plaintiff at the administrative hearing to the effect that the ALJ is "not required to find medical improvement" in Plaintiff's impairments. [Doc. 8 at 64].

Plaintiff represented herself at the administrative hearing. The ALJ asked Plaintiff if she had any question, and Plaintiff responded:

> I got questions, but I don't know if it's to what you just asked. I was court order approved in 2012, then reevaluated in 2016 and was approved again to be legally disabled. The only reason I lost it was because I got married. It was not because I got better, it's not because I'm going to get better, I've actually gotten worse. It is because I got married.

*Id.* at 63. The ALJ replied, indicating that the ALJ believed that he/she need not consider whether medical "improvement" had occurred since the previous decision, but rather he/she may simply take a "fresh look" at the evidence as a whole:

> ALJ: The thing is, it's a whole new process because they have to look at your evidence all over again. So, it's not like anybody is mad at you or anything like that, but they're not required to find medical **improvement** when there's been a break in care, when the benefits were ceased. And, I think they were ceased for a couple years, weren't they?
>
> Plaintiff: Yeah, a year and a half, 18 months.
>
> ALJ: Yes, they just got to take a **fresh look** and every time somebody looks at it, they can look at it a little bit differently. So, that's basically why we're here. I'm taking a whole new **fresh look** at everything.

4

*Id.* at 64 *(emphasis added)*.

While these assertions may be true as a general matter, it is unclear whether they took *Drummond* into account. This Opinion is unaware of any caselaw indicating that *Drummond* does not apply where there has been a prior cessation of SSI for reasons unrelated to disability status. While the ALJ recognized applicability of *Drummond* in her written decision, the Court has no way of gauging the extent to which the ALJ's assertions influenced her written decision.

This Opinion is not persuaded by the Commissioner's argument that the ALJ, consistently with *Drummond*, "gave a 'fresh look' to Plaintiff's application and determined that new, material evidence demanded a new RFC." [Doc. 15 at PageID.753]. The Commissioner cites *Earley v. Comm'r*, 893 F.3d 929, 931 (6th Cir. 2018) for the proposition that *Drummond* does not "prevent the agency from giving a fresh look to a new application containing new evidence … while being mindful of past rulings and the record in prior proceedings." *Id.*

*Earley* is distinguishable. In the present case, as in *Drummond*, the claimant would have benefited by the ALJ's acceptance of the previous ALJ's RFC finding. In contrast, Earley argued that the ALJ should ignore the previous ALJ's RFC and consider his new application afresh. *Earley* struck a balance in which an ALJ may properly feel bound to a prior RFC in the sense of being "mindful of ... the record in prior proceedings," with an eye toward ensuring that "the second filing [does not merely] mimic[ ] the first one." *Id.* at 933. "What's past likely will be precedent in that setting." *Id*. On the other hand, an ALJ must always give a "fresh look" at the new evidence. *Id.* at 931. Where (as here) a claimant would benefit by acceptance of the prior RFC finding, no amount of "fresh looking" at the new evidence will excuse departure from the prior RFC unless the evidence reflects medical improvement.

Second, the ALJ identified no new evidence showing medical improvement of the medical impairments that the previous ALJ found limited Plaintiff (as of February 18, 2010) to needing to "rest at

least three hours a day." *Id.* at 107.  The previous ALJ explained that this disabling finding was based on Plaintiff's fatigue and weakness due to diabetes and COPD:

> In reaching this conclusion, the undersigned finds that beginning on February 18, 2010, the claimant's allegations regarding her symptoms and limitations are generally credible.  The record shows that around this time, the claimant began to complaint of increased blurred vision occurring at least once a week.  She also complained of numbness and tingling of the legs and feet.  The record shows the claimant required additional medical treatment through the local emergency room, and at least one hospitalization, due to shortness of breath.  Her diabetes became increasingly difficult to control, as medications prescribed for her COPD, such as steroids, increased her blood sugar levels.
>
> The Administrative Law Judge finds that the claimant is capable of performing light exertional activity at all times since her alleged onset date of November 5, 2007, limited by her diabetes and COPD symptoms including shortness of breath.  Due to a worsening of her symptoms and difficulty controlling them as of February 18, 2010, the undersigned finds the claimant must rest about three hours a day due to fatigue and weakness.

*Id.*  The present ALJ's decision does not identify new evidence showing a medical improvement in Plaintiff's diabetes and COPD.

Third, admittedly, the previous ALJ's finding that Plaintiff requires at least three hours of unscheduled rest during the workday appears to a bit gratuitous in the sense that it was not dictated by the medical evidence but based on the previous ALJ's pain-credibility assessment.  Nevertheless, *Drummond* held that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the [RFC] findings of a previous ALJ."  126 F.3d at 842.  *Drummond* does not distinguish between RFC findings grounded in credibility determinations and those based on medical evidence.

**Plaintiff's first argument is unpersuasive.**

As noted above, the ALJ found that Plaintiff has the following severe, or vocationally significant, impairments:  obesity; diabetes mellitus; osteoarthritis of the left knee; chronic obstructive pulmonary disease (COPD); anxiety; and depression.  [Doc. 8 at 41].  Plaintiff's first argument is that, in light of Dr. Kerrick's medical opinions, the ALJ erred in not including (as a severe impairment) her post-traumatic stress disorder (PTSD) and degenerative disc disease of the lumbar spine.  [Doc. 13 at PageID.732-33].

Regarding Plaintiff's alleged PTSD, on July 18, 2019, Sarah Kerrick, Psy.D., examined Plaintiff at the request of the Commissioner. Dr. Kerrick opined the following diagnostic impressions:

**DIAGNOSTIC IMPRESSIONS:**

Posttraumatic Stress Disorder

Generalized Anxiety Disorder

Major Depressive Disorder, Recurrent, Moderate

Medical Diagnoses Deferred to Medical Doctor

[Doc. 8 at 619]. Dr. Kerrick explained that Plaintiff's PTSD is related to her anxiety and depression:

**Behavioral Health History:** The claimant reported that she suffers from anxiety and depression. She has had anxiety for years and tried to push it away. Much of this anxiety is trauma related. … The claimant presented with symptoms that are consistent with posttraumatic stress disorder (PTSD). The claimant has experienced exposure to serious injury and sexual violation. The claimant suffers re-experiencing symptoms; and spends significant time in attempt to avoid distressing memories, thoughts, feelings, and people and places that remind her of the traumatic events.

*Id.* at 616-17.

Plaintiff's argument is unpersuasive for three reasons. First, Dr. Kerrick did not diagnose PTSD but rather Dr. Kerrick had that "diagnostic impression," with actual diagnosis "deferred to medical doctor." *Id.* at 619. *See Quisenberry v. Comm'r*, 757 F. App'x 422, 427 (6th Cir. 2018) (At Step 2 of the sequential evaluation process, a claimant must prove that she has "a severe medically determinable physical or mental impairment" that "is expected to result in death" or "be expected to last for a continuous period of at least 12 months") (quoting 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509). Second, the ALJ found that Plaintiff suffers from severe anxiety and depression. *Id.* at 41. In so finding, the ALJ implicitly recognized that Plaintiff's PTSD is severe because it is related to her anxiety and depression. Third, generally, an argument that an "ALJ failed to denote PTSD as a severe limitation" is unavailing where "no evidence or authority [is cited] to show that inclusion of PTSD as a severe impairment would have changed the ALJ's

7

assessment of … functional limitations." *Hill v. Comm'r*, 500 F. App'x 547, 551 (6th Cir. 2014). Plaintiff has cited no such evidence or authority.

Regarding Plaintiff's degenerative disc disease of the lumbar spine, the ALJ found that impairment to be non-severe:

> The undersigned also takes note that the claimant has previously complained of back problems. Radiographs of the lumbar spine from April 10, 2018, suggested small anterior osteophytes of the lowest four lumbar vertebrae with narrowing of the left L4-L5 facet joint and borderline narrowing of the L5-S1 disc. (Exhibit B2F/9). … However, the claimant has not repeatedly been documented needing urgent care for unbearable spine-related pain. Notably, her lumbar spine was reported to be nontender to palpation on April 10, 2018, despite radiographs being taken on this date. (Exhibit B2F/11).
>
> All things considered, no severe impairment can definitively be found regarding any of the aforementioned … musculoskeletal issues on a sustained basis. In any event, these issues … were … duly taken into account by the undersigned in reaching the residual functional capacity finding.

[Doc. 8 at 42].

Plaintiff's argument is unpersuasive for two reasons. First, Plaintiff has not proven that her degenerative disc disease of the lumbar spine significantly affects her ability to physically function. *See* 20 C.F.R. § 404.1522 ("An impairment … is not severe if it does not significantly limit your physical or mental ability to do basic work activities. … Examples of these include … [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling."). Second, even if the ALJ erred in finding Plaintiff's lumbar impairment to be non-severe, the error was harmless. This is because the ALJ stated that Plaintiff's non-severe lumbar impairment was "duly taken into account … in reaching the residual functional capacity finding." [Doc. 8 at 42]. *See Emard v. Comm'r*, 953 F.3d 844, 852 (6th Cir. 2020) ("An erroneous finding of nonseverity at step two is … harmless where the ALJ properly considers nonsevere impairments at later steps.").

### Plaintiff's second argument is unpersuasive.

Second, Plaintiff argues that the ALJ erred in discounting Dr. Kerrick's finding of marked limitations. [Doc., 13 at PageID.734-38].

8

Among other things, Dr. Kerrick opined that Plaintiff is markedly limited in her ability to interact with the public, supervisors, and co-workers and to accept criticism from supervisors and is moderately to markedly limited in her ability to respond to change/stress/pressures in a work environment. [Doc. 8 at 619].

As noted above, Plaintiff filed her claims for DWB and SSI on April 29, 2019. [Doc. 8 at 39]. Therefore, the new rules for weighing medical opinions apply. *See* 20 C.F.R. § 404.1520c ("For claims filed ... on or after March 27, 2017, the rules in this section apply.").

Under the new regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ must consider "supportability, consistency, relationship [with the claimant], specialization, and other factors" when determining the persuasiveness of an opinion. 20 C.F.R. § 405.1520c(c)(1)-(5). But the ALJ need only explain how he considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion(s) will be. 20 C.F.R. § 404.1520c(c)(1). The more consistent the medical opinion(s) is with the evidence from other medical and nonmedical sources, the more persuasive it will be. 20 C.F.R. § 404.1520c(c)(2).

Plaintiff's argument is unpersuasive for three reasons. First, the ALJ discounted Dr. Kerrick's finding that Plaintiff is "markedly limited in the ability to interact with others" because:

> Dr. Kerrick's opinion cannot be found fully persuasive because it endorsed a degree of mental restriction not reasonably supported by or consistent with the longitudinal psychological treatment narrative and the claimant's activities of daily living. For example, Dr. Kerrick suggested the claimant to be markedly limited in the ability to interact with others. There is simply no reasonable indication in the treatment record to conclude the claimant to be unable to adequately manage herself in proximity to others when necessary. Again, the claimant appears to have generally been able to adequately respond and relate to various medical professionals, and she can shop in stores.

[Doc. 8 at 46]. The ALJ's findings comported with the new rules for weighing medical opinions (described in the preceding paragraph). Second, even under the old rules for weighing medical opinions, which are generally regarded as more claimant favorable, because Dr. Kerrick was an examining (as opposed to a treating) source, Dr. Kerrick's opinion would not have been entitled to controlling weight, and the ALJ would not have been required to give particularly "good reasons" for the weight given to that opinion. *See* 20 C.F.R. § 404.1527(c)(2). Third, an ALJ may prefer the opinion of the Commissioner's non-examining program psychologist if it provides "more detailed and comprehensive information" or is "more consistent ... with the record as a whole." *Brooks v. Comm'r*, 531 F. App'x 636, 642 (6th Cir. 2013). In this case, in light of Dr. Kerrick's findings and the record as a whole, the Commissioner's non-examining program psychologist, Michelle Bornstein, Psy.D., opined limitations that are generally[1] consistent with the ALJ's mental RFC determination. *Compare* Dr. Bornstein's limitations at Doc. 8, pp. 177-80, with ALJ's RFC at Doc. 8, p. 43. The ALJ found Dr. Bornstein's opinion to be generally persuasive. *Id.* at 46.

## ORDER

Because Plaintiff's third argument is persuasive and the Administrative Law Judge's (ALJ's) decision does not comport with applicable legal standards, the Court hereby REMANDS this matter to the Commissioner for a new decision and any further proceedings deemed necessary and appropriate by the Commissioner.

August 23, 2022

Lanny King, Magistrate Judge
United States District Court

---

[1] An exception is that, whereas Dr. Bornstein found that Plaintiff can "interact with the public occasionally (up to 1/3 time) and frequently (up to 2/3 time) with coworkers and supervisors," the ALJ found that Plaintiff can "frequently interact with coworkers, supervisors, and the general public." [Doc. 8 at 43, 180].

10